### UNITED STATES v. ONE STUDEBAKER ROADSTER, MOTOR NO. GE–1387, SERIAL NO. 1411692.

#### No. 527.

District Court, D. Tennessee, at Greeneville.
April 11, 1930.

Smith, Carlock & Poore, of Knoxville, Tenn., for claimant.

TAYLOR, District Judge.

The automobile in this case was seized in August, 1929, by narcotic agents in Sullivan county, Tenn., in the Northeastern division of the Eastern district, while, as alleged in the libel, it was being used in violation of sections 3061 and 3062 of the Revised Statutes (19 USCA §§ 482, 483), by the transportation of narcotic drugs.

The C. I. T. Corporation has filed an intervening petition setting up that by conditional sales contract acquired by it, title was retained in the above-described automobile until the unpaid purchase money secured thereby was fully paid. It is conceded that the intervener had the legal title by assignment of this contract, and that the use of the car for the purpose claimed in the libel was not authorized by or known to it or by the assignor of the conditional sales contract at the time the lien was created, though this may not be material. The intervener raises as an issue of fact a violation of either section of the Revised Statutes relied upon, particularly that the article of merchandise found in the car was untax paid or unlawfully imported morphine.

The United States insists that the possession of narcotic drugs is prima facie evidence of the offense of the transportation and concealment of drugs imported contrary to the law. This insistence is based upon an act approved February 9, 1909, as amended May 26, 1922, vol. 42, U. S. Statutes at Large, p. 596, and particularly paragraph (f) of section 2 (21 USCA § 174) which provides: "Whenever on trial for a violation of subdivision (c) the defendant is shown to have or to have had possession of the narcotic

drug, such possession shall be deemed sufficient evidence to authorize conviction, unless the defendant explains the possession to the satisfaction of the jury." The phrase "the drug" as used therein evidently relates to a drug "imported contrary to law" referred to in section 2 (c), 21 USCA § 174. In other words, the sections relieve the government from the burden in such cases of proving the actual unlawful importation, placing that burden upon the defendant in such cases after it appears from the evidence that the defendant was in possession of such unlawfully imported narcotics. Moreover, this section does not relate to the burden of proof in cases where the proceeding is in rem, but in proceedings in personam.

■■ The intervener insists in the present case, moreover, that the government has failed to establish the fact to which section 2 (f) is applicable; that is, that the narcotic drug involved and in possession of the occupants of the car was imported. The evidence, in so far as it relates to this controverted question, is, that by analysis made by a narcotic agent who testified, it was morphine hydrochloride; that morphine hydrochloride, so far as he knows and believes, is not now manufactured in the United States, particularly in the form in which the seized narcotic involved here was found, if in fact it was ever so manufactured. I have found no statute, and none has been cited, which prevents the manufacture of morphine hydrochloride in the United States. The evidence discloses that morphine hydrochloride is yielded in a larger percentage from gum opium than is morphine sulphate. The evidence discloses that the narcotic contained no evidence of tax payment, nor did it contain any legend whatsoever indicating its source or the contents of the package. The evidence does not disclose that morphine hydrochloride cannot be manufactured in the United States, and even if the statutes or regulations pursuant thereto forbid its manufacture, the inference that it was manufactured in the United States in violation of law would be as logical as to infer that it was manufactured elsewhere and imported into the United States in violation of law. I do not think the statute relied upon by the government is applicable in proceedings in rem, because the statute is in contravention of common-law principles, is penal, and must be strictly construed. No case has been cited, and I find none, in which the construction urged by the libelant has been given in proceedings in rem. Cases are cited in which the statute has been so construed in criminal cases where the charge was the unlawful importation of opium or derivatives thereof. That Congress found it necessary to provide that the possession of imported narcotic drugs created the presumption or a prima facie case of the unlawful importation thereof is evidence, if any were needed, that such presumption would not arise from the possession, even of such drug, that is unlawfully imported drugs, unless by express enactment. By analogy and by the same process of reasoning, I feel that the inference of unlawful importation could not arise from the mere possession of narcotics customarily manufactured in foreign countries and rarely manufactured in the United States.

■ The provisions of these sections relied upon in the libel of information are harsh and permit no defense once the character of the concealed or transported commodity is clearly established, even though the owner of the vehicle involved be innocent of knowledge of the transportation or concealment and be guilty of no negligence or wrongdoing in connection therewith. I think, therefore, in cases such as this the government should be held to clear and satisfactory proof touching the true character of the involved commodity, and as to that I am not satisfied in this case.

The petition of intervention is therefore sustained on this ground alone, and an order with reference to the disposition of the car involved may be prepared for approval.